FILED
___ O'clock & ___ min ___ M
DEC 0 8 2004
BRENDA K. ARGOE, CLERK
United States Bankruptcy Court
Columbia, South Carolina (6)

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 04-08218-W |
| Peter Carlo Katzburg, | **ORDER** |
| Debtor. | Chapter 7 |

This matter comes before the Court upon Loretta Katzburg's ("Katzburg") Motion for Relief from Stay ("Motion") and Peter Katzburg's ("Debtor") objection thereto. In light of the parties' arguments and submissions, the Court makes the following findings of fact and conclusions of law.[1]

ENTERED
DEC 0 8 2004
J.G.S.

## FINDINGS OF FACT

1. Katzburg and Debtor were married on September 17, 1979.

2. On June 12, 2000, Katzburg commenced an action seeking a judgment of divorce and other relief ("Divorce Action") in the Supreme Court of Suffolk County, New York ("State Court").

3. The State Court began a trial for the Divorce Action on August 14, 2001 and entered a decision on February 14, 2003. On January 13, 2004, the State Court entered an Amended Judgment of Divorce ("Judgment of Divorce").

4. The Judgment of Divorce awarded Katzburg a fifty-percent (50%) interest in the following accounts (1) Smith-Barney Profit Sharing, (2) Smith-Barney Joint Account, (3) American Express Account, and (4) Bank of New York Account (collectively these accounts shall hereinafter be referred to as the "Matrimonial Accounts") or judgment of $662,770.50, a

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

sum that may be paid to Katzburg in three equal installments.[2] The Judgment of Divorce was not appealed.

5. On the eve of a further State Court hearing concerning the issuance of a Qualified Domestic Relations Order ("QDRO"), Debtor filed his bankruptcy petition with this Court, on July 14, 2004, in order to receive Chapter 7 bankruptcy relief.

6. On September 23, 2004, Katzburg filed her Motion. Later that day, the Chapter 7 Trustee assigned to Debtor's case filed an objection in response to the Motion. On October 4, 2004, Debtor also filed an objection to Motion.

## CONCLUSIONS OF LAW

In this matter the Court must determine whether to grant relief from the automatic stay to Katzburg pursuant to 11 U.S.C. § 362[3] in order to pursue her interests in the Matrimonial Accounts through the establishment of a QDRO and other relief in the State Court. The Chapter 7 Trustee objects to the Motion because he asserts that granting relief from the stay would enable the State Court to dissipate assets in which Debtor's bankruptcy estate may

---

[2] The Judgment of Divorce provides as follows:
    ORDERED AND ADJUDGED, that the marital assets to be distributed to the parties and the values thereof are as follows:
    1. Smith-Barney Profit Sharing: $314,240
    2. Smith-Barney Joint Account: $262,490
    3. American Express Account: $57,500
    4. Bank of New York Account: $691,311
    for a total value of $1,325,541; and it is further
    ORDERED AND ADJUDGED, that as and for equitable distribution, the plaintiff is awarded 50 percent of the marital assets identified above, or the sum of $662,770.50, which sum shall be paid to the [Loretta Katzburg] in three equal installments by no later than March 1st of each year, the first payment due March 1, 2003, with any unpaid balance to accrue interest at the rate of nine percent per annum from March 1, 2003. [sic] and it is further
    ORDERED AND ADJUDGED, that, as an additional award of equitable distribution, [Loretta Katzburg] shall receive 50 percent of the [Debtor's] 40,000 shares of IET stock . . . .

[3] Further references to the Bankruptcy Code shall be by section number only unless otherwise stated.

have an interest.[4] Debtor objects to the Motion on the grounds that Katzburg has failed to demonstrate that she is entitled to relief from stay. Additionally, Debtor also believes that this Court must determine whether the entire current balance of the Matrimonial Accounts are property of the bankruptcy estate and whether Debtor has the ability to claim certain exemptions in the Matrimonial Accounts. Katzburg, on the other hand, contends that Debtor has failed to establish that the entire balance of the Matrimonial Accounts should be included in Debtor's bankruptcy estate.

In order to enjoy the protections afforded by the automatic stay, Debtor must have a property interest in the Matrimonial Accounts. See In re Anderson, C/A No. 04-01278-W, slip op. (Bankr. D.S.C. Apr. 15, 2004)(holding that, in order for debtors to enjoy protections of § 362, debtors should, at the very least, demonstrate some good faith, colorable basis for possession of property covered by the automatic stay). Although federal law defines what property interests are included within the bankruptcy estate, state law determines the nature and existence of a debtor's property interests. See In re Moffet, 356 F.3d 518, 521 (4th Cir. 2004)("Yet, while federal law defines in broad fashion what property interests are included within the bankruptcy estate, state law determines the nature and existence of a debtor's rights.")(internal citation omitted). Because of the equitable distribution of property made by the State Court, this Court must look to New York law to determine the nature of Debtor's interests in the Matrimonial Accounts; and therefore, to what extent, he enjoys the protections of § 362.

Under New York law, "rights in marital property are inchoate and do not vest until entry of a judgment dissolving the marriage." Schachter v. Lefrak (In re Lefrak), 223 B.R.

---

[4] The Chapter 7 Trustee also asserts that approximately half of the present balance of the Matrimonial Accounts may be exempt.

3

431, 439 (Bankr. S.D.N.Y. 1998). On January 13, 2004, the State Court entered a Judgment of Divorce that awarded Katzburg with a fifty-percent (50%) interest in the Matrimonial Accounts or, in the alternative, three equal payments totaling $662,770.50. The Judgment of Divorce is final and not appealed. After reviewing the language of the Judgment of Divorce, the Court concludes that the Judgment of Divorce awarded Katzburg with a fifty-percent interest in the Matrimonial Accounts and thereby provided Katzburg with a vested property interest in the Matrimonial Accounts.[5] Because Debtor filed for bankruptcy after the entry of the Judgment of Divorce, Katzburg's fifty-percent (50%) interest in the Matrimonial Accounts is her sole and separate property to which Debtor cannot claim any intervening property interest in order to include Katzburg's interest in his bankruptcy estate. See McQuade v. McQuade (In re McQuade), 232 B.R. 810, 813 (Bankr. M.D. Fla. 1999)(holding that a New York state court's equitable distribution of a pension vested a nondebtor spouse's property interest in the pension); In re Lefrak, 223 B.R. at 439 ("If the state court enters a divorce decree, makes an equitable distribution award and transfers title to the nondebtor spouse prior to bankruptcy, the property will not become property of the debtor spouse's estate."); Wisniewski v. Piasecki (In re Piasecki), 171 B.R. 49, 51-52 (Bankr. N.D. Ohio 1994)("Upon the filing of the decree of divorce, the former spouse's interest in a pension becomes the sole and separate property of the spouse, not a debt."); Potter v. Potter (In re Potter), 159 B.R. 672, 675-76 (Bankr. N.D.N.Y. 1993)(holding that, upon entry of a judgment of divorce, ownership rights in a pension awarded by a court through equitable distribution vest in the spouse to whom such property has been equitably distributed); In re Greenwald,

---

[5] Although the State Court, in the alternative, allowed Debtor to pay the equivalent sum of $662,770.50 and such a payment obligation raises a closer question of whether that payment would be dischargeable, it is clear that the payment provision is separate from the determination of Katzburg's property interests in the Matrimonial Accounts.

4

134 B.R. 729, 730-31 (Bankr. S.D.N.Y. 1991)(holding that, pursuant to a judgment of divorce entered prepetition, a former spouse's rights in an employment stock ownership plan trust account, cash award, and transfer from debtor's individual retirement accounts were not property of debtor's bankruptcy estate because the nondebtor spouse's property rights vested prior to debtor's bankruptcy filing ).

There is little doubt that Katzburg is entitled to immediately collect fifty-percent (50%) of the present value of the Matrimonial Accounts. However, the evidence indicates that the balance of the Matrimonial Accounts has significantly decreased since the State Court determined the percentage and value of Katzburg's property interests.[6] This Court believes that the circumstances surrounding the prior determination of the value of Katzburg's interest and the overall decrease in value of the Matrimonial Accounts are matters which are best addressed by the State Court in consideration of the equitable distribution laws of the state of New York. Because the extent of Debtor's and Katzburg's interests in the Matrimonial Accounts has been separately addressed by the Judgment of Divorce, the Court finds that the State Court appears to be best equipped to effect the terms of its judgment. Furthermore, "[t]he Fourth Circuit specifically adheres to the principle that generally, bankruptcy courts owe state courts deference in domestic matters." Roberge v. Buis, No. 95-3133, 1996 WL 482686, at **2 (4th Cir. Aug. 27, 1996). See also In re Dole, No. 96-77677-W, slip op. at 2 (Bankr. D.S.C. Feb. 20, 1997)("This Court recognizes the long standing principle that, absent unusual factors, federal law favors state retention of control of domestic matters. Generally, bankruptcy courts owe state court deference in domestic matters.")(internal citations omitted).

---

[6] Katzburg has argued that the decrease in value is the result of delay caused by Debtor. On the other hand, Debtor claims that his inability to actively trade assets in the accounts due to the freezing of the accounts by the State Court's prior orders has caused the decrease.

5

When determining whether to grant relief from stay to allow a state court to decide a domestic matter, this Court must "balance the potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992). The factors to consider under this balancing test are (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because the matter would have to be litigated in the bankruptcy court; and (3) whether the estate can be protected properly by a requirement that the creditor seek enforcement of any judgment through the bankruptcy court. Id.

In this case, the factors weigh in favor of lifting the stay. First, the State Court is best equipped to apply New York law to give effect to its judgment. A critical issue for the State Court to determine is whether, under New York law, Katzburg is entitled to the total current balance of the Matrimonial Accounts because the State Court previously valued Katzburg's interest in the Matrimonial Accounts at $662,770.50[7], but the total present value of the Matrimonial Accounts appears to have decreased to $459,958. Moreover, the State Court's determination of the parties' property interests in the Matrimonial Accounts does not give rise to any bankruptcy issues that requires the expertise of this Court. If the State Court determines that Debtor has an interest of value in the Matrimonial Accounts, this Court can include such an interest in Debtor's bankruptcy estate; otherwise, the Matrimonial Accounts are not included in Debtor's bankruptcy estate since he has no property interests in the

---

[7] The $662,770.50 is fifty-percent (50%) of the $1,325,541 total value of the Matrimonial Accounts established by the State Court in the Judgment of Divorce.

6

Matrimonial Accounts under New York law. See In re Moffet, 356 F.3d at 521 (noting that while determining the extent of the bankruptcy estate is a matter of federal bankruptcy law, determining a debtor's interest in property is matter of state law.). Second, judicial economy will not be sacrificed by allowing the State Court to interpret and determine how to enforce its judgment. Third, creditors will not be prejudiced since the Debtor and the Chapter 7 Trustee shall have the opportunity to participate in the State Court proceedings and there appears to be no likelihood of collusion between the parties. Providing Katzburg with relief from stay also appears to be the most equitable means to deal with this matter since the Fourth Circuit has cautioned that "bankruptcy courts should not be permitted to be used as draconian tools in divorce proceedings to deny a spouse what would be his or her due interest in an equitable distribution proceeding." Roberge v. Buis, 1996 WL 482686, at **2.

Therefore, in light of the foregoing, the Court grants Katzburg relief from the automatic stay to pursue remedies under state law so that the State Court can establish the extent of the parties' interests in the Matrimonial Accounts and distribute the amount of assets Katzburg is entitled to receive under New York law.

Furthermore, property interests of the Debtor in the Matrimonial Accounts that the State Court establishes remain property of Debtor's bankruptcy estate and should not be collected absent further order of this Court. Katzburg, through local counsel, is ordered to advise the Chapter 7 Trustee and this Court of the determination of these issues by the State Court in a timely manner.

**AND IT IS SO ORDERED.**

*/s/ John E. Waites*
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
December 8, 2004