FILED
at____O'clock &___min___M

APR 2 8 2005

BRENDA K. ARGOE, CLERK
United States Bankruptcy Court
Columbia, South Carolina (7)

ENTERED
APR 2 8 2005
S. R. P.

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                    C/A No. 04-08218-W

Peter Carlo Katzburg,                     Chapter 7

                          Debtor.         ORDER DISMISSING CASE

This matter comes before the Court pursuant to a Motion to Dismiss ("Motion") filed by Loretta Katzburg ("Ms. Katzburg"). In the Motion, Ms. Katzburg seeks dismissal of this case and asserts objections to exemptions claimed by Peter Carlo Katzburg ("Debtor").[1] Both Debtor and the Chapter 7 Trustee filed objections to the Motion. The Motion further sought relief from the automatic stay, and on December 8, 2004, the Court issued an order granting Ms. Katzburg relief from the automatic stay. The order issued on December 8, 2004 enabled Ms. Katzburg to pursue a determination from a New York State family court ("State Court") that would establish the extent of her interests in certain bank accounts as marital assets and distribute her share of such accounts. To date, the State Court addressing the issue has not made a determination. Nonetheless, in light of the factual record developed in this case, the pleadings of interested parties, and the arguments presented at the hearing on the Motion, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this bankruptcy proceeding under Federal Rule of Bankruptcy Procedure 7052.[2]

---

[1]    On April 11, 2005, the parties executed a Consent Order resolving the exemption issue as stated therein.

[2]    To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

## FINDINGS OF FACT[3]

1.  Ms. Katzburg is Debtor's former wife.  The two were married on September 17, 1979.

2.  During his marriage to Ms. Katzburg, Debtor served as the Chief Financial Officer for a $230 million company.  Debtor continues to make his living as an accountant and financial consultant.

3.  On June 12, 2000, Ms. Katzburg commenced an action seeking a judgment of divorce and other relief ("Divorce Action") in the State Court.

4.  The State Court began a trial for the Divorce Action on August 14, 2001.  During the adjudication of the Divorce Action, Debtor filed a competing divorce petition in Washington State ("Washington Divorce Proceedings").  The Washington Divorce Proceedings interrupted and delayed the adjudication of the Divorce Action.  After 18 months, the State Court intervened and issued an order declaring the Washington Divorce Proceedings invalid.

5.  The trial in the Divorce Action lasted thirty-four (34) days.  At the conclusion of the trial, which was apparently delayed, the State Court entered a decision on February 14, 2003; thereafter, on January 13, 2004, the State Court entered an Amended Judgment of Divorce ("Judgment of Divorce").

6.  Debtor expressly regretted discontinuing the competing litigation in Washington State, and revealed his desire to avoid complying with the order of the State Court.

7.  The Judgment of Divorce awarded Ms. Katzburg a fifty percent (50%) interest in certain bank accounts (the "Matrimonial Accounts") or judgment of $662,770.50.

---

[3]    Certain of the Findings of Fact set forth in the December 8, 2004 Order are restated herein for ease of reference.

8.      On the eve of a further State Court hearing concerning the issuance of a Qualified Domestic Relations Order ("QDRO"), Debtor filed a Chapter 7 bankruptcy petition with this Court on July 14, 2004.

9.      Debtor was aware that the Divorce Action involved hearings scheduled for July 16, 2004. Apparently, Debtor filed his bankruptcy in an effort to avoid these hearings, at a time when Ms. Katzburg appeared to be the only creditor aggressively pursuing Debtor for payment.

10.     Debtor has avoided paying any of the monthly alimony payments required by the Judgment of Divorce, which required payments of $3,200.00 per month beginning in October 2001.

11.     Furthermore, Debtor has not made distributions from the Matrimonial Accounts as required by the Judgment of Divorce.

12.     According to Debtor's schedules, Ms. Katzburg is Debtor's primary creditor.[4]

13.     While under oath at a § 341 meeting and an examination pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004 Examination"), Debtor admitted that he failed to disclose his ownership interests in certain legal entities and his ownership of various art work and rugs, some of which he has transferred for no consideration. After acknowledging his failure to disclose such interest on his schedules, Debtor amended his schedules in order to disclose some of these assets.

14.     On two occasions, Debtor amended his schedules and statement of financial affairs after the § 341 hearing. In the amended disclosures, Debtor listed an additional $2,868.00 in unemployment compensation that he received in 2003. He also disclosed an interest in Arc

---

[4]      Since the date of Debtor's filing, the Internal Revenue Service has filed a proof of claim for $2,122,729.70.

3

Technology, Inc. and TASA Overseas Shipping. Debtor indicates that neither company holds any assets or has incurred any liabilities. Furthermore, the Amended Judgment of Divorce entered by the State Court, on January 13, 2004, directs Debtor to transfer fifty-percent (50%) of his 40,000 shares of Integrated Environmental Technologies, LLC ("IET") to Ms. Katzburg. However, Debtor did not disclose share holdings in IET on his schedules.

15.    On his schedules, Debtor indicates that he is employed by Nine Yards International ("Nine Yards Int'l"). Debtor does not list any ownership interest in Nine Yards Int'l in any of his schedules. He asserts that his present wife owns Nine Yards Int'l entirely. Debtor testified that none of his money has ever gone into Nine Yards Int'l. However, this assertion is contrary to information contained in the tax return that he prepared and filed for the year 2000. In that tax return, Debtor indicates that he is an owner of Nine Yards Int'l and that he is taking a $17,000 deduction for a company loss. Under cross-examination, Debtor was unable to explain the deduction satisfactorily and could not reconcile the discrepancy between the tax return and his bankruptcy schedules.

16.    Debtor's schedule I, as originally filed, indicates that Debtor earns no income. In response to Question 1 to the statement of financial affairs, Debtor shows the following:

   a. $55,522.00 - January 1, 2004 to Present - Business Income for Nine Yards Int.
   b. $27,150.00 - January 1, 2003 through December 31, 2003 - Business Income paid by Tri County Gin and Cotton Co., LLC to Nine Yards, Int.
   c. $0.00 - January 1, 2002 through December 31, 2002

17.    Nevertheless, the amended budget that Debtor filed with his second amended schedules continues to show that Debtor has $0.00 in income, while his monthly expenses increased to $10,426.00.

4

18.     While giving testimony during the hearing on the Motion, Debtor admitted that he generated substantial income during 2004, but that he directed all of that income to Nine Yards Int'l. Debtor's Schedules have not been further amended to indicate that Debtor receives any income.

19.     During the hearing, Debtor also provided the Court with conflicting information. For instance, Debtor denied being employed by Nine Yards Int'l, but later indicated that he works for Nine Yards Int'l. Furthermore, Debtor has stated that he began working for Nine Yards Int'l in September 2003; but at other times, he indicated that he was working for them in April 2002.

20.     In his schedules, Debtor indicates that his living expenses are extremely high. Debtor's amendments to his schedules describe two different budgets with expenses ranging from an original monthly total of $8,684 to a new monthly total of $10,426. Debtor's testimony at the hearing on Debtor's Motion to Dismiss explained some of these expenses as follows:

* $680 a month in home maintenance – This is to pay the expenses of the live in housekeeper and nanny.

* $800 a month in food expenses.

* $300 a month in medical expenses, although he also spends $294 a month for health insurance.

* $329 a month for his home and two cars, although he denies owning a car.

* $1,683 a month for his wife's credit card expenses.

* $325 a month for entertainment.

5

21.    Although Debtor was required to attend a § 341 meeting and three different Rule 2004 Examinations pursuant to a Court order and subpoena, he has failed to comply with the subpoenas by producing detailed documentation of his financial affairs. Debtor has repeatedly contended he cannot produce such documentation because such information is in the possession of the State Court and he does not have copies. As a result, Debtor has not produced all of his tax returns, bank statements, and financial information. By failing to produce such information, Debtor is making it difficult to analyze his financial condition or determine the accuracy of his bankruptcy schedules. Furthermore, the Court notes that Debtor has also testified he does not intend to supplement the record of this case by producing the financial information that Ms. Katzburg wishes to review. Debtor admits that he has not complied with discovery and has not provided documentation in response to Ms. Katzburg's discovery requests.

22.    This failure to comply with court orders and to provide subpoenaed documents is consistent with Debtor's behavior during the Divorce Action. As the State Court noted:

> Extensive discovery was required due to [Debtor's] failure to disclose employment and financial records.
> It is clear to this Court that many of [Ms. Katzburg's] discovery demands have yet to be honored by [Debtor] at the time [of] trial. During the trial, [Debtor] was still producing materials requested earlier in time and prior to the commencement of trial. [Debtor] compelled [Ms. Katzburg] to seek discovery with subpoenas on various non-party witnesses for producing documents.

23.    After asserting that he could not produce his 1999 tax return because it was in Ms. Katzburg's possession, Debtor modified his testimony during a second Rule 2004 Examination and later explained that he had not filed a 1999 tax return. Although Debtor

6

had filed tax returns for subsequent years, he could not articulate a convincing reason for failing to file a tax return in 1999. Under oath, Debtor simply stated that he "forgot."

24.    The Court notes that Debtor received a severance package of approximately $1.6 million from his prior employer in 1999, but has failed to provide documentation regarding the distribution of these funds.

25.    Between 1995 and 1999, Debtor's average income was more than $650,000 a year and, in 1999, he received the previously referenced severance package worth $1.6 million. As indicated above, he asserts that his present income is $0.00.

26.    In his schedules, Debtor discloses the four different bank accounts that comprise the Matrimonial Accounts. It appears that these accounts contained $1,325,541.00 as of June 2000, but contained only $459,958.00 as of the date of the bankruptcy petition. Debtor admits directing trading in the accounts. During the course of the Divorce Action, the State Court noted:

> This account had a balance of $591,162.50 as of June 2000. As of October 2001, the account reflected a balance of $165,071. Cross-examination of [Defendant] created a <u>substantial doubt</u> that the reduction of the value of the account was caused by market forces. (emphasis added)

Furthermore, the State Court determined that Debtor is responsible for the full amount of the account balance during June 2000.

## CONCLUSIONS OF LAW

11 U.S.C. § 707(a)[5] provides that a Chapter 7 case may be dismissed for cause. Although the Bankruptcy Code does not provide a definition of "cause," a majority of courts have recognized that bad faith constitutes "cause" for dismissing a Chapter 7 case. See <u>In re</u>

---

[5]    The Court shall make further references to provisions of the Bankruptcy Code by section number only.

Zick, 931 F.2d 1124, 1127 (6th Cir. 1991) (holding that lack of good faith is cause for
dismissal of a debtor's petition under § 707(a)); In re Tamecki, 229 F.3d 205, 207 (3rd Cir.
2000)("Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the
petitioner fails to demonstrate his good faith in filing."); In re Griffieth, 209 B.R. 823, 827
(Bankr. N.D.N.Y. 1996) ("The absence of a debtor's 'good faith' has been generally
recognized as a valid "cause" for dismissal under Code § 707(a)."); In re Davidoff, 185 B.R.
631, 636 (Bankr. S.D. Fla. 1995) (holding that a "determination of good faith requires an
inquiry into any possible abuses of the provisions, purposes, or spirit of the bankruptcy law
and whether the debtor genuinely needs the liberal protections afforded by the Bankruptcy
Code"); In re Cappuccetti, 172 B.R. 37, 39 (Bankr. E.D. Ark. 1994) (holding that lack of
good faith is cause for dismissal under § 707(a)); In re Hammonds, 139 B.R. 535, 541
(Bankr. D. Col. 1992) (holding that a debtor's good faith is an "implicit jurisdictional
prerequisite to the filing of a case under the Bankruptcy Code"). In re Brown, 88 B.R. 280,
283 (Bankr. D. Haw. 1988) (same). But see Neary v. Padilla (In re Padilla), 222 F.3d 1184,
1193 (9th Cir. 2000) (declining to allow dismissal of a Chapter 7 case for a "bad faith").

In articulating a standard for determining whether a Chapter 7 case should be
dismissed for cause as a result of bad faith, the United States District Court for the Eastern
District of Virginia has recognized that "[m]ost courts considering whether a debtor's
deliberate acts or omissions amount to a bad faith cause for dismissal under § 707(a)
sensibly employ a totality of the circumstances test focusing on a variety of factors."[6]

---

[6]        The District Court for the Eastern District of Virginia listed the following factors that courts typically
examine when determining whether to dismiss a Chapter 7 case for bad faith: (1) The debtor's concealment or
misrepresentation of assets and/or sources of income, such as the improper or unexplained transfers of assets
prior to filing; (2) The debtor's lack of candor and completeness in his statements and schedules, such as the
inflation of his expenses to disguise his financial well-being; (3) The debtor has sufficient resources to repay
his debts, and leads a lavish lifestyle, continuing to have excessive and continued expenditures; (4) The

McDow v. Smith (In re Smith), 295 B.R. 69, 79-81 (E.D. Va. 2003).[7] This Court agrees

with McDow v. Smith and concludes that it should examine the following relevant factors

based upon the totality of the circumstances attendant in this case in order to determine

whether to dismiss Debtor's Chapter 7 case for cause.

## I.    DEBTOR'S LACK OF CANDOR, INCOMPLETE SCHEDULES AND STATEMENTS, AND HIS UNWILLINGNESS TO ASSIST A CREDITOR BY DISCLOSING FINANCIAL INFORMATION

This Court has placed a strong emphasis on the accuracy of schedules and the

necessity of a debtor's full disclosure when filing schedules with the Court. See e.g. In re

Simpson, C/A No. 03-07158-W, slip op. at 6 (Bankr. D.S.C. Nov. 13, 2003)("accuracy,

honesty, and fill disclosure are critical to the functioning of bankruptcy and are inherent in

the bargain for a debtor's discharge"). See also In re Justice, C/A No. 02-01524-W, slip op.

at 7 (Bankr. D.S.C. Aug. 29, 2002) (noting that one of a debtor's basic obligations in

bankruptcy is providing accurate information); Anderson v. Hooper, 274 B.R. 210, 220

(Bankr. D.S.C. 2001) (concluding that debtors "have a duty to respond to the questions

asked of them thoroughly and thoughtfully"); In re Boland, C/A No. 01-03911-B, slip op. at

2 (Bankr. D.S.C. May 24, 2001) (noting that this Court "will not be placed in the position of

ferreting the truth from inaccurate and misleading information supplied by debtors . . .," and

that "[n]either the [United States Trustee], the Clerk, nor *creditors* and parties in interest

---

debtor's motivation in filing is to avoid a large single debt incurred through conduct akin to fraud, misconduct, or gross negligence, such as a judgment in pending litigation, or a collection action; (5) The debtor's petition is part of a "deliberate and persistent pattern" of evading a single creditor; (6) The debtor is "overutilizing the protection of the Code" to the detriment to his creditors; (7) The debtor reduced his creditors to a single creditor prior to filing the petition; (8) The debtor's lack of attempt to repay creditors; (9) The debtor's payment of debt to inside creditors; (10) The debtor's "procedural gymnastics" that have the effect of frustrating creditors; [and] (11) The unfairness of the debtor's use of the bankruptcy process. McDow v. Smith, 295 B.R. at 70 n.22.
[7]    While the Court in McDow v. Smith noted that there is no Fourth Circuit decision squarely on point, it found the Fourth Circuit's decision in Carolin Corp. v. Miller, 886 F.2d 693, 698-700 (4th Cir. 1989), instructive by noting that "dismissal for cause" in a Chapter 11 case includes dismissal for filing the petition in bad faith. McDow v. Smith, 295 B.R. at 76-78.

should be placed at a similar disadvantage.") (emphasis added). Debtor contends that he has corrected any inaccuracies in his schedules by supplementing them with amendments to provide full disclosure. Nevertheless, the Court finds Debtor's failure to disclose income; certain stock holdings; various interests in business entities; and ownership of various art works and rugs disturbing. Debtor contends that his failure to disclose such items was inadvertent and did not prejudice any parties since the assets he did not disclose had little to no value. Moreover, Debtor notes that the Chapter 7 Trustee objected to the dismissal of this case. Therefore, Debtor concludes that he has fulfilled his duty to disclose.

The Court finds otherwise. Debtor has admitted, under oath, that he failed to disclose the existence of certain legal entities which he owns and failed to disclose art work and rugs which he currently owns or has transferred for no consideration. While he has now attempted to correct his schedules through various amendments, they remain incorrect. He continues to assert that he has no income, despite admitting the generation of substantial income now and in the past. He continues to fail to disclose the share holdings in IET, despite a finding of such interests by the State Court in an order issued during the course of the Divorce Action. Furthermore, Debtor has not disclosed his ownership interests in Nine Yards Int'l, despite claiming an ownership interest in Nine Yards Int'l and declaring $17,000 loss from that venture, on the tax return that he prepared and filed for the year 2000. Debtor's diversion of 100% of his income to Nine Yards Int'l also indicates an ownership interest in that business.

In Siegel v. Weldon (In re Weldon), this Court stated that "[t]he critical time for disclosure is at the time of the filing of the petition and the Debtor has the responsibility to do so." 184 B.R. 710, 715 (Bankr. D.S.C. 1995). "Furthermore, there is no allowance for

selectivity in asset disclosure," In re Simpson, C/A No. 03-07158-W, slip op. at 7 (Bankr. D.S.C. Nov. 13, 2003), because allowing "the Debtor to use his discretion in determining the relevant information to disclose would create an end-run around this strictly crafted system." In re Weldon, 184 B.R. at 715. Accordingly, Debtor's late amendments to his schedules in response to Ms. Katzburg's repeated complaints of lack of disclosure do not serve this Court's strong policy of requiring complete and full disclosure of financial affairs and assets in any given bankruptcy case.

Debtor's failure to produce documents and information detailing his financial condition or any transfer of assets in response to Ms. Katzburg's subpoena, which calls for the production of certain financial information, is also unacceptable. "Bankruptcy is a give-and-take process, and, in order for debtors to receive the benefits and protections of the Bankruptcy Code, they must fulfill their role of complete disclosure *to their creditors* and the Court." In re Justice, C/A No. 02-01524-W, slip op. at 7-8 (Bankr. D.S.C. Aug. 29, 2002) (citing Anderson v. Hooper, 274 B.R. 210, 220 (Bankr. D.S.C. 2001)) (emphasis added). Thus, Debtor's apparent unwillingness to assist his creditors and this Court with developing an accurate view of his financial condition are clearly contrary to this Court's strong policy of full disclosure.

## II.    DEBTOR'S CONCEALMENT OF INCOME AND ASSETS

Debtor leads a lavish lifestyle as evidenced by the different budgets in the schedules, with expenses ranging from an original monthly total of $8,684 to a monthly total of $10,426. His stated expenses include a $680 a month home maintenance expense to pay the expenses of his live-in housekeeper and nanny, an $800 a month food expenses, a $300 per month medical expenses that does not include his $294 a month health insurance, a $329 per

month expense for his home and two cars that he denies owning, a $1,683 per month expense for his current wife's credit card bills, and a $325 a month expense for entertainment.

Despite providing such a detailed view of his expenses, Debtor has sworn that he earns zero income and his schedules continue to indicate that assertion. Under oath, however, Debtor has admitted that he generates substantial income from the consulting services he provides. Debtor's past employment history supports his admission. In 2002, he generated at least $27,150 (while drawing unemployment compensation) and in 2003, he generated at least $55,500. Debtor admitted generating income substantially higher during the year 2004 than 2003, but noted that he directed payment of these funds to Nine Yards Int'l, his current wife's company, rather than to himself. By diverting pay that he would otherwise be entitled to collect, Debtor is able to claim, to this Court and to the Internal Revenue Service ("IRS"), that he receives no income.

Accordingly, Debtor's dealings with Nine Yards Int'l are far from arm's length. Therefore, it is clear that Debtor is concealing income that he should disclose by diverting his remuneration back to Nine Yards Int'l, a business entity that provides income directly to his wife. Under the unique circumstances of this case, concealing income is especially problematic because it prevents the Court and the Chapter 7 Trustee from conducting an analysis of substantial abuse under 11 U.S.C. § 707(b).

## III. DEBTOR'S "DELIBERATE AND PERSISTENT PATTERN" OF EVADING A SINGLE CREDITOR

Debtor's pattern of conduct during this case and the Divorce Action demonstrates an ongoing effort to avoid payment to Ms. Katzburg for a number of years. The Divorce Action, which Debtor's competing Washington Divorce Proceeding delayed for eighteen

months, continues after four years. While there are other creditors in the case, it is apparent that Debtor filed his bankruptcy case in an effort to continue his deliberate and consistent pattern of thwarting his ex-wife's enforcement of the Judgment of Divorce because her claims comprise a large portion of Debtor's obligations. Therefore, Debtor has gone to great lengths to avoid payment of Ms. Katzburg, and he has avoided paying alimony to her since October 2001. The fact that Debtor filed his bankruptcy only two days before further hearings in the Divorce Action further evidences Debtor's intent to frustrate Ms. Katzburg's efforts to enforce her rights under the Judgment of Divorce.

## IV. DEBTOR'S UNFAIR MANIPULATION OF THE BANKRUPTCY PROCESS AND ITS FRUSTRATING EFFECT ON CREDITORS

Debtor's schedules indicate a lavish lifestyle, while he continues to avoid payment of Ms. Katzburg of amounts awarded to her years ago. Debtor is significantly under-employed, as is evidenced by his unsalaried work for his current wife's company and a comparison of his current income versus his past income. Debtor's prior annual income of approximately $650,000, the distribution of $1.6 million to him in 1999 and his current assertion that he receives no income whatsoever, despite the ongoing generation of income for his wife's company, indicates a deliberate attempt to avoid receiving income. See In re Stewart, 175 F.3d 796, 809-810 (10th Cir. 1999) (utilizing the Fourth Circuit's totality of the circumstances test for finding 'substantial abuse' where under-employed doctor took a low-paying fellowship in order to avoid his ability to repay his family obligations). Therefore, it appears that Debtor is attempting to continue avoiding payment of Ms. Katzburg, in reliance upon the bankruptcy process, which he unfairly manipulates by frustrating Ms. Katzburg's efforts to examine his financial condition by being uncooperative and evasive.

13

V.    CONCLUSION

Debtor contends that if this Court adopts the <u>McDow v. Smith</u> decision, a review of the factors would show that Debtor did not file this case in bad faith and that there is no cause to dismiss Debtor's case.  However, the facts of this case do not support such an assertion.

In this case, the totality of the circumstances weighs in favor of dismissing Debtor's case for cause as a result bad faith.[8]  Given Debtor's professional credentials and financial expertise, Debtor's inconsistent and contradictory information regarding income and assets is unacceptable.  Debtor has not been forthcoming with information, has failed to disclose assets, has attempted to conceal his income, and has avoided and delayed payment of his obligations to Ms. Katzburg over a period of many years.   Clearly, Debtor's desire to avoid paying his obligations to Ms. Katzburg is his primary motivation in filing this bankruptcy and is part of a continuing inequitable pattern to avoid such payment.

The Court is mindful of the Chapter 7 Trustee's desire to keep Debtor in bankruptcy in order to investigate Debtor's financial affairs further.  In fact, the Court has considered whether it is actually in Ms. Katzburg's best interest to continue the case and have the Chapter 7 Trustee deal with her remaining claims in this bankruptcy rather than to continue to pursue Debtor from forum to forum.  However, Ms. Katzburg's counsel has assured the Court of Ms. Katzburg's desire to have this case dismissed.  Since the vast majority of Debtor's liabilities can be dealt with in the State Court or through the IRS's collection authority and considering this Court's concerns as expressed herein, dismissing Debtor's case appears to be in the best interests of creditors.

---

[8]    The Court has considered all of the applicable factors listed in <u>McDow v. Smith</u> and finds that, when applied to the facts of this case, dismissal is warranted.

14

Therefore, in light of the foregoing, the Court finds that the totality of the circumstances attendant in this case demonstrate cause to dismiss Debtor's Chapter 7 case pursuant to § 707(a). Accordingly, Ms. Katzburg's Motion to Dismiss is granted.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
_April 28_, 2005

15